[No. 4229.]

DUBOIS ET AL. v. BOWLES ET AL.

1. Pleading—Misjoinder—Waiver.

Where a complaint contained several items of account, the defendants by answering waived objection to the complaint on the ground that items were improperly joined or embraced matters which could not properly be included in the action.

2. **Pleading—Joinder of Causes of Action—Parties.**

Causes of action cannot be united in the same complaint unless they affect all the parties, both plaintiff and defendant, in the same character and capacity.

3. **Same—Mortgages—Exemplary Damage.**

In an action by two plaintiffs to have a conveyance declared a mortgage and for an accounting, a claim for exemplary damage growing out of the manner the defendant took possession of the mortgaged premises, which affected only one of the plaintiffs, could not properly be joined.

4. **Trusts and Trustees.**

A trustee will not be permitted to commit acts inconsistent with his trust, or which interfere with his duty in discharging it.

5. **Mortgages—Trusts and Trustees—Measure of Damage.**

Defendant became surety for plaintiffs and to secure him plaintiffs executed to defendant a deed to certain land and placed it in escrow to be delivered to defendant in case he had to pay the debt. Defendant paid the debt and received the deed and placed it on record. By agreement with plaintiffs defendant then offered to sell the land to the county in which it was located at a price agreed upon between defendant and plaintiffs and which was sufficient to have repaid defendant and left a balance of several thousand dollars for plaintiffs. After negotiating the sale to the county and just on the eve of its consummation and acceptance by the county defendant withdrew the offer and went into possession of the land claiming it as absolute owner. Held that defendant, by agreeing to act on behalf of plaintiffs in negotiating the sale to the county, the legal title being vested in him, and having made an offer to the county which was satisfactory to both himself and plaintiffs, thereby accepted and entered upon the execution of a trust which he could not surrender at will, and having refused to carry out the agreement he became liable to plaintiffs for the loss sustained by them, measured by the difference between the price the land was to have been sold for and its then market value.

6. **Same**

That plaintiffs made no objection to the withdrawal of the offer by defendant, and the fact that they might have made a sale to the county, and upon tender of the amount due defendant he would have been required to execute releases that would have enabled them to convey a title to the county, was no defense in view of defendant's claim of absolute ownership.

**7. Same.**

As between plaintiffs and defendant, the fact that the offer of sale had not been accepted by the county in a manner that would be binding upon it was no defense, where the county was prevented from accepting by the act of defendant in withdrawing the offer.

**8. Same.**

The fact that plaintiffs still assert ownership of the property and are seeking to redeem and to recover for rents and other damages does not prevent them from holding defendant responsible for any loss they may have suffered because of his withdrawal of the offer of sale to the county.

**9. Trusts and Trustees—Evidence.**

In an action by cestuis que trust against a trustee for damages for preventing a sale of trust property to a county by withdrawing his offer of sale before it was formally accepted by resolution of the board of commissioners, testimony of the commissioners was admissible to prove that they would have accepted the offer if it had not been withdrawn.

**10. Mortgages—Nursery Trees—Rights of Mortgagee.**

As between a mortgagor and mortgagee nursery trees planted by the owner of real estate become a part of the realty and pass as such under a mortgage, but as long as the mortgagor has the right to redeem, he would have the right, in the ordinary course of trade, to sell such of the stock as was suitable for transplanting, and the mortgagee would have no right to remove or convert to his own use any of such trees and would be liable in damage to the mortgagor for any of such trees removed by him.

**11. Same.**

Where a son planted and owned a nursery on his mother's land, and afterwards joined his mother in a mortgage of the land although he had no interest in the land, and at the time of the transaction he called the mortgagee's attention to the nursery as enhancing the value of the security it was sufficient to sustain a finding that it was the intention of the mortgagors to convey the nursery as a part of the realty upon which it was situate.

**12. Bills and Notes—Mortgages—Redemption—Accounting.**

Defendant became surety on plaintiffs' note for the purpose of raising money to pay off another note and mortgage of the plaintiffs. Plaintiffs conveyed the land to be redeemed to

defendant to secure him agaist the note he signed. Defendant received the face value of the note he signed as security and with the money paid off plaintiffs' note and mortgage, but only part of the money received by him was required to pay off the note. Afterwards defendant paid in full the note signed by him as surety for plaintiffs. In an action by plaintiffs against defendant to redeem the land and for an accounting, defendant is only entitled to credit for the amount paid by him in taking up plaintiffs' original note and mortgage and not for the amount he paid on the note signed by him.

13.  Mortgages—Redemption—Accounting—Rents — Water Assessments.

In an action by mortgagors against a mortgagee in possession of the mortgaged premises, to redeem and for an accounting, where defendant was charged with the full rental value of the premises, including water for irrigation, he was properly credited with amounts paid for ditch assessments to secure water for irrigation.

14.  Same—Taxes.

In an action by mortgagors against a mortgagee for an accounting and to redeem, the mortgagee is entitled to credit for amounts paid for taxes.

15.  Same—Insurance.

Where defendant became surety for plaintiffs to raise money to take up a note and mortgage on land and took a conveyance of the land to secure him, and the mortgage so paid off by defendant provided that in case the mortgagors failed or refused to insure the property the party holding it as security could pay the insurance and add the amount to the debt secured, in an action by plaintiffs against defendant to redeem and for an accounting, defendant is entitled to credit for amounts paid by him for premiums for insurance of the buildings on the premises.

16.  Mortgages—Foreclosure—Redemption.

Where the beneficiary in a deed of trust executed prior to the enactment of the statute allowing redemption from foreclosure sales under deeds of trust, elects to foreclose by proceedings in court, he waives his right of sale under the terms of the trust deed and the decree of foreclosure should give the mortgagor the right of redemption.

17.  Same—Receivers.

Where a mortgagee has no lien–upon the rents and profits

of the mortgaged premises, the mortgagor is entitled to retain possession after entry of a decree of foreclosure and during the time within which he may redeem, and the mortgagee is not entitled to the appointment of a receiver for the premises upon an allegation that the security is inadequate and that the mortgagor is unable to farm and manage the property, where it does not appear that a receiver is necessary to preserve the property from waste and depreciation in value.

*Error to the District Court of Arapahoe County.*

Mr. THOS. B. STUART, Mr. CHAS. A. MURRAY and Mr. SAM. E. BROWNE for plaintiffs in error.

Mr. T. J. O'DONNELL and Mr. MILTON SMITH for defendants in error.

Mr. JUSTICE GABBERT delivered the opinion of the court.

The subject matter of controversy in this case is the amount which the plaintiffs in error, Catherine W. Skelton and her son, Boyington Skelton, are owing the defendant in error, Joseph W. Bowles, which he is entitled to have established as a lien upon lands owned by them. The inception of the dispute between the parties grows out of the following facts, which will be stated more in detail as required when we come to pass upon the questions submitted for our determination.

The Skeltons were indebted to the Denver Savings Bank upon obligations secured by a trust deed or deeds, upon their lands. The securities for this indebtedness were about to be foreclosed, and in order to prevent this action, they entered into an arrangement with Bowles, whereby he became surety for them on a note, the proceeds of which were to be used for the purpose of purchasing, or at least securing control of, the notes held by the bank. For the purpose of indemnifying Bowles on account of the liability he assumed in signing this note, they deeded him the lands in question, with others, and placed

the conveyances evidencing the transaction in escrow, under an agreement which, in terms, provided that in the event he was compelled to pay the note upon which he had become surety, the deeds should be delivered to him. The plaintiff in error, The Trout Lake Townsite, Water & Improvement Company, joined in one of these conveyances, but that company appears to have been practically under the control of Boyington Skelton, and it is unnecessary to more than refer to the fact that it joined in the execution of, or executed a deed, to Bowles for one of the tracts of land conveyed to him as security by the Skeltons. There also appears to have been another note, secured by trust deed upon one of the tracts deeded to Bowles as additional security for signing the note with the Skeltons, but we do not understand he makes any claim on this account, for the reason that the deeds which appear to have been absolute on their face embraced all the lands upon which he is entitled to have a lien established in his favor. The arrangement contemplated was effected, and the notes, with trust deeds, in favor of the bank, deposited or assigned to the payee of the note signed by Bowles as collateral security for its payment. By subsequent arrangement the time within which the deeds executed to Bowles might be delivered to him was extended, but in all other essential particulars the escrow agreement remained unchanged. The Skeltons failed to pay the note signed by Bowles, and he was compelled to take it up. Several months later he took down the deeds and placed them on record. About this time, at the request of the Skeltons, he opened negotiations with the county of Arapahoe to sell the lands to the county for a poor farm, for a sum which would have repaid him and left a margin of several thousand dollars. For the purpose of furthering these negotiations he made a written offer to sell the land to the county at a price which was entirely satisfactory to the Skeltons and himself. He afterwards withdrew this offer before it was acted upon by the county

officials, and on the day following this action, entered into the possession of the premises, except a house occupied by Mrs. Skelton, and one by her son, claiming that by virtue of the deeds, he was the absolute owner of the lands thereby conveyed. The Skeltons, by a trustee, then commenced an action to have these deeds declared mortgages, and for an accounting, to which Joseph W. Bowles and his son Charles were made defendants. The Skeltons, however, appear to be the real parties in interest as plaintiffs, and they will be so treated. Joseph W. Bowles is also the real defendant as to the matters which we shall determine.

The complaint filed contains several items of account. Whether they were improperly joined or embraced matters which could not properly be included in the action commenced, in so far as they were tried below, is not presented, for the reason that the defendants answered, and therefore waived any objections which might have been successfully urged against the complaint in this respcet.—*Sams Auto C. C. Co. v. League,* 25 Colo., 129. The main purpose of the case, so far as it relates to matters which we shall determine, appears to be to have the deeds declared mortgages, and for an accounting in the way of damages, rents, and other items growing out of the defendant Bowles taking possession, and also to compel him to account, or hold him responsible, for his action in withdrawing his offer to sell to the county. By the answer filed, it might be said the defendant claimed the deeds were absolute conveyances, but they have elected to treat them as equitable mortgages, to secure the defendant, Joseph W. Bowles, on account of advances made, and we are relieved from a determination of whether or not they were, in fact, executed in the first instance for the sole purpose of securing Bowles for moneys advanced by him which he is entitled to be repaid as a condition

precedent to a re-conveyance to the Skeltons. The case was properly tried upon this theory below. On the issues formulated on the several claims of the respective parties, over the disputed items of account between them, which were deemed material and relevant by the court below, a trial was had, and on the finding of the amount which Bowles was entitled to recover, less damages, rents, and other items found in favor of the Skeltons, a decree was rendered, declaring the deeds mortgages, and directing a sale of the premises to satisfy the balance found in favor of Bowles. From this decree the plaintiffs bring the case here for review on error.

The first error presented is the action of the court in striking from the complaint the averments with respect to the manner the defendant took possession of the lands as against the plaintiff, Mrs. Skelton, and her claim for exemplary damages on this account. Conceding that this action is of a character which would permit a claim for such damages to be joined with one to have the deeds declared mortgages, and for an accounting by virtue of sec. 70 of the Civil Code, if Mrs. Skelton were the sole plaintiff and party in interest as such, other conditions named in this section which control the joinder of several causes of action are absent. Causes of action can not be united in the same complaint unless they affect all the parties, both plaintiff and defendant, in the same character and capacity. Boyington Skelton had no interest whatever in the exemplary damages claimed on the part of his mother, and the action of the court in striking the parts of the complaint which counted on this claim was not error.

The next matter we shall consider relates to the rulings of the trial court with respect to the action of the defendant in withdrawing the offer to sell to the county. We have already noticed that at the request

of the Skeltons he had opened negotiations with the county of Arapahoe for a sale of the lands at a price and on terms which were entirely satisfactory to both the Skeltons and himself, and which, if consummated, would have fully reimbursed him for all advances which he had made for their benefit under the original arrangement between the parties. This stands undisputed. For the purpose of establishing their case on the subject under consideration, plaintiffs offered in evidence the written proposition of the defendant to sell the lands; the report of the hospital and farm committee of the board of commissioners of Arapahoe county, which was highly favorable, and in which the purchase was recommended for the price named in the proposition submitted by the defendant; the opinion of the county attorney in response to a resolution of the commissioners, which advised them they had the legal right to purchase the lands; the minutes of the board in which it appears that several parties appeared and protested against the purchase, and others urged it, and that as soon as this hearing was closed, and before any action was taken by the board, the defendant, by his son Charles, withdrew his offer; the withdrawal, which was in writing, in which the defendant states as his reason for this action, the many and strong protests entered by residents of the county where the lands are located against the purchase for a poor farm; the minutes of the further proceedings of the board at this time, containing a resolution of one of the members to adopt the report of the hospital and farm committee, and to accept the proposition to purchase the lands at the price named; and the statements of two other members of the board, to the effect that it was their intention to have supported this resolution had not the offer to sell been withdrawn. This evidence was refused, or, perhaps, more properly speaking, it was stricken out on mo-

tion of defendant, the court holding that it was immaterial and irrelevant. Plaintiffs further offered to prove by Mrs. Skelton, who was present at the meeting of the board when the proceedings above referred to were had, that the defendant, Charles Bowles, was also there, opposing the sale; that she and her son insisted on selling the property to the county at the price named in the offer, and that she did not consent to the withdrawal of, or, at any time after it was made, consent that the defendant might withdraw his offer to the county. They further offered to prove by the members of the board as constituted at the time when the offer was withdrawn that Charles Bowles, prior to the withdrawal, appeared before them and used his influence to prevent a sale to the county; that the county had funds availaable to make the purchase; that the Skeltons were both present and insisting that Bowles should carry out his offer; that over their protest it was withdrawn; that as members of the board, they had made up their minds to accept the offer and had it not been withdrawn, a resolution to that effect would have been regularly passed by a vote of four to one. This testimony was refused.

As bearing on the questions necessary to consider in determining whether or not the action of the court in striking out and refusing to admit the testimony above referred to was error, the following matters are material: The defendant Bowles had left the state several days before the offer to the county was withdrawn, and if we correctly understand the statements in the brief of his counsel, directed his son by wire to withdraw the offer. In his answer he excuses his action for the reason that many persons, residents in the vicinity where the land was located, were opposing the purchase; that newspapers published in the city of Denver were also vigorously opposed to the county

buying the lands, for the reason that the price was exorbitant; that proceedings to prevent the purchase were threatened, and he therefore became satisfied it would be impossible to make a sale to the county at the proposed, or any, price, sufficient to pay the indebtedness due him from the Skeltons, or which would be satisfactory to them. He stated at the trial that at the time he took possession, he thought the deeds conveyed to him a perfect title, because he had paid the note, and that for this reason he was the unqualified owner of the lands. Mrs. Skelton testified that she came to the city of Denver with Charles Bowles on the day the offer was withdrawn, and in response to a question from her, he stated, in substance, the sale was all right, and there were no changes. In the complaint it is charged that the intrinsic value of the property exceeds the sum for which it was offered to the county, but on account of financial conditions, the market value of such property is greatly depressed, and it is impossible to sell it except at a figure far below this offer. In their answer the defendants allege the market value of the lands to be fifteen thousand dollars less than the price at which it was offered to the county. The claim of counsel for plaintiffs, broadly stated, is to the effect that Bowles, in the accounting, should be charged with the full sum for which the property was offered to the county. They also claim that the original arrangement between the parties contemplated that Bowles should assist in selling the lands.

Counsel for defendant contend that the testimony stricken out, and that refused does not establish any liability on the part of Bowles to the Skeltons on account of the transaction with the county. Their reasons for this position, when summarized, are to this effect: The conveyances to Bowles from the Skeltons were for the purpose of indemnifying him, and

not to enable him to act in the way of a disposition of the property; hence, he was under no obligation to sell to the county; that he being a mere mortgagee, the Skeltons could have sold to the county subject to his mortgage, tendered him the amount due, and obtained a release; that the Skeltons made no objection to the withdrawal; that the evidence does not establish the county would have purchased, for the offer was never accepted; and that the action of the Skeltons, as stated in their complaint, is inconsistent within itself, because they are claiming the property as mortgagors, or asserting the right to redeem, and at the same time treating the action of Bowles in withdrawing the offer and assuming possession as constituting a transaction fully consummated which would have divested them of all interest in the property, and only rendered him liable, if liable at all, to account to them the same as though he had received from the county the price at which the property was offered.

What the original understanding between the parties with reference to a sale of the premises may have been, is immaterial. By agreeing to act on behalf of the Skeltons, in negotiating a sale to the county, the title to the property being vested in him, and having made an offer to the county which was satisfactory to both the Skeltons and himself, he thereby accepted, and entered upon the execution of, a trust which he could not surrender at will. It was his duty, so far as it lay within his power, to carry out this arrangement, and to take no steps which would prevent its consummation.—*Switzer v. Skiles*, 3 Gilm. (Ill.), 529. A trustee will not be permitted to commit acts inconsistent with his trust, or which interfere with his duty in discharging it. 1 Story's Equity Jurisprudence, § 322. This may be laid down as a general proposition governing the duty which

trustee owes to his *cestui que trust*. The record does not bear out the statement of counsel, that the Skeltons made no objection to the withdrawal of the offer; but conceding they did not, and assuming that they might have made a sale and conveyance to the county, and, upon tender of the amount due Bowles, he would have been required to execute releases which would have enabled them to convey a title to the county free from any claims as to him, it would seem clear from the testimony stricken out and refused, in connection with his subsquent action and claims, that any objection on the part of the Skeltons to the withdrawal of the offer, or a tender to Bowles of the amount due him, would have been unavailing. He went into the possession of the property claiming it as his own; did not recognize that he was merely a mortgagee; had instructed his son to withdraw the offer without in any manner consulting the Skeltons; in short, in this respect, acted, as he subsequently claimed, as though he was the absolute owner of the property, and that the Skeltons had no interest to protect. On the day of the final action before the board, his son Charles, who must then have known the wishes of his father with respect to the matter, allowed Mrs. Skelton to believe the sale would probably be made, and yet, in the face of this statement, according to the testimony offered and refused, appeared before the board and used his influence to prevent an acceptance of the offer made. In the light of this conduct and action, the conclusion is irresistible that Bowles had made up his mind to prevent a sale to the county, and had the Skeltons made any arrangement towards effecting a sale, he would have prevented it by refusing to convey. Whatever his motive may have been, for withdrawing the offer, but conceding that its sole purpose was, as stated in the withdrawal, to prevent the location of a poor farm

upon these lands because of the objections of his neighbors, then, in order to effect this end, or at least prevent the possibility of the purchase for the purpose intended by the county, it was necessary for him to take the course he did, and he would not have receded from his position, no matter what course the Skeltons might have pursued. If, as stated in his answer, it is true that a sale to the county could not have been effected at a price which would have reimbursed him, or been satisfactory to the Skeltons, then certainly he need not have been concerned about the protests of his neighbors, and it was wholly unnecessary for him to withdraw his offer. So far there is nothing to indicate the county did not intend to purchase at the price named, and at this time his reasons for his action are inconsistent and unexplained. He should have allowed his offer to stand, and if the county had refused to accept his proposition without any action upon his part, he would have been relieved from responsibility on this account. It is true the offer was never accepted by the county. If this were an action between the county and the defendant Bowles for a specific performance of his offer, this would be material, but as between himself and the Skeltons it is not. The county was given no opportunity to accept in a manner which might have been binding upon itself, as well as the defendant. He took the step to prevent this result by withdrawing his offer before the commissioners could act, at the close of the hearing before the board had for the purpose of listening to those urging and objecting to the proposed purchase. Testimony was offered which, if received and uncontradicted, would have established that the board would have accepted the offer. We know of no reason why this testimony was not admissible for the purpose of establishing what the result would have been

had the offer not been withdrawn. The rule of evidence in matters of this character is not different between a trustee and a county, and a trustee and a private individual. If it were possible for a trustee to avoid responsibility to his *cestui que trust* by withdrawing an offer to sell property under his control before acceptance, then it would be impossible to ever establish a liability on this account, because a trustee would always have it within his power to prevent the consummation of a transaction which it was his duty to carry out, either in obedience to the directions and wishes of his *cestui que trust,* or in obedience to the duty which the law might impose upon him.

The action instituted by the plaintiffs is not inconsistent with their claim in the way of damages which they assert they have sustained by reason of the course pursued by the defendant. Had the conveyances under which they took possession been, in law and in fact, absolute deeds, then no obligation would rest upon him to account for the matters charged in the complaint, because in such case the property would have been his. The deeds, however, are merely mortgages. The bill filed is essentially one to redeem from such deeds, and as an incident to this object, for a determination of the amount which the plaintiffs shall pay to effect this purpose. In order to ascertain this amount, an accounting is prayed on items mentioned. If it could be said that plaintiffs were seeking to hold defendant responsible only for the sum which would represent the difference between the price for which the property was offered to the county and the amount they were owing to defendant, on the day he withdrew the offer, then it might be true their claim for damages in the way of rents could not be maintained, nor could they ask to redeem, because an action of that character could only proceed upon the theory that they were divested of all interest in

the property. The mere fact, however, that they still claim to be the owners of the property and are asserting a right to be reimbursed for certain items which are based upon the claim of ownership, does not prevent them from holding him responsible for any loss they have suffered because of his withdrawal of the offer to the county. The complaint determines the character and object of an action.—*Hunt v. Eureka Gulch M. Co.*, 14 Colo., 451. When digested in the case at bar, it is not limited to a claim against the defendant for the recovery of a sum growing out of his action in withdrawing the offer, as though the transaction with the county had been consummated, which, as we have indicated, would have divested plaintiffs of all interest in the property; but, on the contrary, they have elected to still retain their interest subject to any legal claims the defendant may establish, but at the same time compel him to respond in damages resulting from his withdrawal. Parties always have the right to elect the remedy they will pursue against the one whom they claim has been guilty of acts to their damage. Equity grants the relief to which the parties are entitled on the case made embraced within the issues. It is apparent from a reading of the complaint, that plaintiffs claim to have suffered a loss because the sale was not made to the county, for the reason, as they state, the price at which the property can be sold, and the value of the property can only be determined by its market value, is less than the sum for which it was offered. While the complaint is somewhat ambiguous on this subject, it is made clear by the answer, in which it is stated the value of the property is fifteen thousand dollars less than the sum for which it was offered to the county. A defective complaint may be aided, and the omissions supplied by the answer.— *D. & R. G. R. R. Co. v. Cahill,* 8 Colo. App., 158. The offer to the county was made by the defendant at

the solicitation of the plaintiffs. Had the sale been consummated, a sum sufficient to discharge their indebtedness to the defendant and leave them a margin of several thousand dollars, would have been realized. The defendant had no interest in the property except to be reimbursed therefrom for the advances he had made for the benefit of the plaintiffs, to secure which the title had been vested in him. It was the wish of the plaintiffs that this sale be made. He could certainly urge no valid objection to this course. If the sale had been effected, the plaintiffs would have been relieved of a great burden of indebtedness, and at the same time had a large sum remaining. The defendant having agreed to the arrangement, it was his bounden duty to carry it out, and do nothing which would prevent its consummation. In this respect the relation of the defendant to the plaintiffs was that of trustee, for the test of this relation is the existence of a duty.—*Looby v. Redmond,* 66 Conn., 444. Where a trustee violates the obligations imposed upon him by law, or the duties which he owes to his *cestui que trust,* he must respond to the latter for the natural and proximate damages sustained by reason of such action.—Story on Agency, 9th ed., § 217c; *Fry v. Fry,* 27 Beavan, 144.

We are, therefore, of the opinion that the court erred in striking out the testimony, and refusing that above noticed, for the reason that in the present state of the record this testimony would have established a liability on the part of the defendant to account to the plaintiffs as of the date he withdrew his offer to the county for the difference between the price for which it was offered to the county, and its then market value. That is the measure of the loss they sustained by reason of his action.

The next point made by counsel for plaintiffs is, that the court refused to allow them any relief on ac-

count of the alleged conversion of a nursery upon these lands, which, it is claimed, belonged to the plaintiff, Boyington Skelton. It is charged in the complaint that defendant took possession of this nursery and claimed it as his individual property by virtue of his ownership of the lands upon which it is growing, and has refused to allow Boyington Skelton to remove any of the trees; that defendant has wrongfully converted and appropriated these trees to his own use, and disposed of a part of them. For answer the defendants admit the taking possession of the nursery, and assert that it is the property of the defendant Bowles by virtue of his ownership of the lands, as evidenced by the deeds executed by the plaintiffs; admit he refused to allow Boyington Skelton to remove any of the trees for any purpose, and aver that defendant Bowles has not converted any of the trees to his own use except about three hundred in number, which he sold and disposed of. Counsel for plaintiffs claim the defendants should have been charged with the full value of the trees in the nursery, for the reason that as between a mortgagor and mortgagee they were personal property.

This contention is based primarily upon the ground that the testimony establishes the nursery as the property of Boyington Skelton. As between Skelton and his mother, this may be true, but the vital question is, did the nursery pass by virtue of the conveyances to Bowles? As between landlord and tenant, the general rule is, the latter may remove nursery trees. As between mortgagor and mortgagee, or vendor and vendee, however, the rule is different, and nursery trees planted by the owner of real estate become a part of the realty, and pass as such under a mortgage, although so long as the mortgagor has the right to redeem, he would have the right, in the ordinary course of trade, to sell such of the stock as was

suitable for transplanting. *Maples v. Millon,* 31 Conn., 598; *Adams v. Beadle,* 47 Iowa., 439; *Price v. Brayton,* 19 Iowa., 309.

Boyington Skelton does not appear to have had any interest in the land upon which the nursery was growing. The court, however, found from the testimony that it was the intention of the parties to convey this nursery under the deed given to Bowles. There is abundant testimony to support this conclusion. Boyington Skelton joined in the deed to the land upon which the nursery was growing. There is testimony to the effect that at the time the arrangement was being effected whereby Bowles became surety on the note, Skelton called his attention to the nursery as enhancing the value of the security which they offered to indemnify him. This is certainly sufficient to sustain the finding that it was the intention of the Skeltons to convey the nursery as a part of the realty upon which it is situate. Notwithstanding this finding, however, it does not follow that defendant Bowles can escape liability on account of his action in connection with the nursery. We do not understand from the decree that the court allowed any damages on account of the removal of the trees. In fact, counsel for the defendants assert in their brief that the plaintiffs were given no credit or offset on this account. While it is true that under the findings of the court Bowles could not be held responsible for converting them to his own use, as the personal property of Boyington Skelton, nevertheless he had no right to remove or dispose of any of the trees, because, as yet, his interest is merely that of mortgagee, and he can not deplete the value of the real estate by removing and disposing of that which is a part of it. He admits in his answer that he had removed and disposed of about three hundred trees, and there is testimony to the effect that by reason of the neglect of the

defendants the nursery has been damaged. These are matters which should have been taken into account by the trial court, and such damages awarded as the testimony warranted, because this action resulted in damaging the property, and are acts for which the defendant must be held responsible so long as he is not the absolute owner of the realty upon which the nursery is situate.

It is contended by counsel for plaintiffs that the court erred in ascertaining the amount which the defendant Bowles was entitled to recover on account of the payment of the note which he signed as surety. The purpose of the parties in executing this note appears to have been to raise sufficient money with which to secure control of the indebtedness held by the Denver Savings Bank. The amount due the bank at the time this note was executed is claimed to have been $20,400. A note for this sum was made and signed by the parties, payable to an employee of a firm of brokers, and left with the latter to negotiate. There is no question but that the party purchasing this note paid the full amount represented by its face, and in fact, paid eighty-three dollars and some cents more, being the interest which had accumulated between the date which the note bore and the time it was purchased. It appears the bank only received the sum of $18,971.75 in discharge of its claim against these lands, or for an assignment of the notes and deed of trust which it held against the Skeltons. There is testimony on the part of the defendant to the effect that he paid the full amount of the note which he signed, and the interest thereon. The difference, however, between the amount paid the bank and the amount realized upon this note is unaccounted for. The plaintiffs are certainly not responsible to the defendant for any money which he may have paid on account of this note, or for securing the money

with which to control the indebtedness held by the bank in excess of the sum necessary for that purpose. The defendant Bowles should have been required to explain what disposition was made of the sum represented by this difference. Bowles, however, was allowed credit for the full sum of $20,400 and interest thereon, which, in the state of the evidence, was certainly erroneous to the extent of the difference betwen the sum which was realized on the note and the amount paid to the bank.

It is next claimed by counsel for plaintiffs that the court erred in allowing the defendant credit for the amounts paid for ditch, assessments, taxes, and insurance. The ditch assessments are on account of water utilized for the purpose of irrigating the lands. The defendant was charged with the full cash rental value of these lands, which we infer must have included the water necessary for irrigation, for, unless irrigated, they would be practically valueless for the purpose of farming. It is asserted, however, that these assessments included years prior to the date when the defendant took possession and against which the plaintiffs had a good defense. The amount of such assessments and the testimony bearing on this subject, is not pointed out, and we are unable to determine whether or not the court erred in allowing credit on account of assessments made prior to the time when the defendant took possession. The taxes with which the defendant was credited were liens upon the lands in controversy. Counsel for plaintiffs claim the defendant should not have been allowed any credit on account of such disbursements, because he was a trespasser. Whatever the rule may be, in this respect, as to disbursements made for taxes, by those who are in the wrongful possession of realty, it can not be applied as to taxes in the circumstances of this case. The defendant had an interest in the land as

mortgagee. The laws of the state provide that if a mortgagor neglects to pay the taxes on the mortgaged premises, the mortgagee may do so, and may include the amount thus paid in any action brought to foreclose the mortgage, and have judgment therefor, with interest.—Sec. 3772, 2 Mills' Ann. Stats.

There is an additional reason why the defendant should receive credit for these taxes, which also entitles him to credit for the insurance paid on the building situate on the premises. The trust deed originally executed by the Skeltons for the benefit of the bank provided that in case of the refusal or neglect of the mortgagors to insure or pay taxes on the property thereby conveyed, that the party holding it as security on account of the indebtedness thus secured could pay the insurance and taxes. This trust deed was held by Bowles as additional security, and under its terms he was properly allowed credit for the taxes and insurance.

The next point made by counsel for plaintiffs is, the decree rendered in favor of the defendant did not provide for a redemption from a sale of the premises. In the cross-complaint asking for a foreclosure, the defendant bases his right to such relief upon the deeds, as well as upon the deed of trust originally given the savings bank. This deed of trust, it is asserted, was executed prior to the time when the law allowing redemptions from sales under deeds of trust was enacted, and provided that from a sale under it, there could be no redemption. Whatever its provisions may be, in this respect, is immaterial. Having elected to foreclose the conveyances, which were merely mortgages, upon the lands, by proceedings in court, and also thus foreclose the trust deed held as collateral, he waived all rights of sale under the terms and conditions of the trust deed, and the decree, therefore, should have been the usual

statutory one giving the right of redemption.—*Denver Brick M. Co. v. McAllister,* 6 Colo., 261.

The final question we shall consider relates to the action of the court in appointing a receiver for the property over the protest of the plaintiffs after a final decree had been ordered in the case. It appears that in considering this application no additional evidence was taken. The grounds stated in the application are to the effect that the defendant is unwilling to continue in possession and pay the rent with which he was charged in the decree; that the security is inadequate and insufficient for the amount due him as established by the decree, and that the plaintiffs are unable to farm and manage the property. Other averments are also made in the application, and the statements in the answer and cross-complaint of the defendants are also referred to in support of the application. No statement, however, is made in any of the pleadings filed, nor is there anything in the testimony introduced, which would indicate that if the plaintiffs were placed in possession, they would commit waste. When it was determined by the court that the defendant Bowles was wrongfully in possession of the premises, and that the only interest he had was that of mortgagee, the plaintiffs were entitled to a decree placing them at once in the possession of the premises; for, notwithstanding the fact that the defendant had obtained a judgment for a large sum, and it was established as a lien upon these premises, he was not entitled to retain possession on this account; neither were the plaintiffs, for this reason, precluded from again assuming control of the property unless it appeared they would commit acts of waste which would deplete the value of the security. The averments that they were unable to farm and manage the property themselves are not equivalent to a statement that they could not rent it to some one

who would care for and farm it in such manner as to prevent a depreciation in its value. The rents and profits were not pledged to the payment of any indebtedness which the defendant was entitled to have satisfied by a sale of the premises. The most defendant can claim is that in the event it became necessary to preserve the premises from depreciation during the time within which the plaintiffs might redeem from any sale, it was necessary to place the premises in the charge and under the control of a receiver. The rents and profits could not be appropriated for any other purpose. No showing which warranted the appointment of a receiver to take charge of the property and apply the proceeds to its preservation was made, and the defendant had no right to a decree which precluded the plaintiffs from assuming possession and control of the property in their own behalf, or which subjected them to the payment of the expenses necessarily following the appointment of a receiver, and denied them the right of possession and the rents and profits during the period within which they might redeem. *Marshall Illsley Bank v. Cady,* 78 N. W., 976; *International T. Co. v. United Coal Co.,* 27 Colo., 246; *Hendrie & Bolthoff Mfg. Co. v. Stanley,* 27 Colo., 331.

Other errors are assigned which we do not deem of sufficient moment to justify discussion. No cross-errors are assigned by the defendants. Items of account between the parties determined by the court below, not specially mentioned, will, therefore, stand. The judgment of the court, in appointing a receiver, and relating to these matters held error, is set aside, and the cause remanded for a new trial, upon the issue of the amount which plaintiffs shall be allowed for the withdrawal of the offer to sell to the county; the damages they are entitled to on account of the nursery; and to ascertain the amount and interest to

which the defendant is entitled on account of the payment of the note which he signed as surety, in harmony with the views expressed on these subjects. The court will also take an account between the parties and ascertain the amount which the defendant, Joseph W. Bowles, shall be charged in the way of rents from the date the account on this subject was brought down, in the judgment rendered, and the items he shall be credited with from that date, for ditch assessments, taxes, and insurance. These several matters, when ascertained, in connection with the items of account allowed the respective parties and not disturbed, will exhibit the account between them, and on such account, let the proper decree be rendered.

*Judgment vacated in part and remanded.*

Mr. JUSTICE STEELE dissents.