[No. 5881.]

## Dubois et al. v. Bowles et al.

1. Pleadings—*Amendment—Power of the Court*—Where a decree is reversed and the cause remanded without specific directions as to the matter, the power of the court below to allow an amendment of the pleadings is to be exercised under the same rule as at other times.

2. ——*Discretion*—Unless in allowing an amendment there is a clear abuse of discretion the action of the court below will not ordinarily be disturbed.

Plaintiff is not injured by an amendment which withdraws a previous denial of his averments.

3. Appeals—*Evidence Rejected Below Considered*—Defendant held title to certain lands by absolute conveyances of plaintiffs, alleged to have been executed and accepted merely as security. At the instance of plaintiffs defendant had offered the lands to the county, as the site of a poor farm, for the price of $35,000. This offer had been favorably reported upon by a committee of the county board, and was under consideration. In this situation defendant, against the objection of plaintiffs, withdrew the offer. Plaintiffs thereupon filed their bill praying that the conveyances held by defendant might be declared a mortgage, that an account might be taken, that defendant be restrained from selling the land for less than $35,000, and that any sum due defendant on the day of the withdrawal of the offer to the county should not thereafter draw interest. It was established and found in the court below that the lands were of the value of $35,000 as asserted by plaintiffs, but that at the time of the offer to the county they had no market value; and, upon this, that court rejected from consideration all evidence relating to the offer and the withdrawal thereof, as immaterial. *Held* error; that there still remained for disposition the question whether defendant's conduct was not, in effect, a refusal to accept at that time the amount due him, and whether after that date he should be allowed interest.

4. ——*Equity Cause—Testimony Stricken from the Record Considered on Appeal*—Upon the first hearing of an equity cause in the district court certain testimony, being the record of the proceedings of a public body, the authenticity or veracity of which was not questioned, was stricken out. On the second hearing the court again re-

jected it. Fifteen years had elapsed since the institution of the litigation. In the determination of a second appeal, the court, in view of the long pendency of the litigation, the expressed desire of the parties that a final and speedy determination should be reached, and that a different course could only result in delay, annoyance and expense to the parties treated the evidence as still in the record, and in view, notwithstanding its rejection in the court below.

5. ——*Judgment*—Error occurring in the statement of an account corrected in this court, the data for such readjustment appearing in the record.

6. Mortgate—*Mortgagor Entitled to Possession*—One holding title to lands by deed absolute, in fact intended as a mortgage, may not lawfully enter into possession, or otherwise intermeddle with the property. The mortgagee so wrongfully conducting himself, will, in the account, be charged with the reasonable rental of the land, damages occasioned by him to the premises, and moneys received from others in condemnation proceedings.

7. ——*Mortgagee Preventing Sale of the Mortgaged Lands*, will not under the circumstances of this case thereafter be allowed interest upon the amount then due him.

*Error to Arapahoe District Court.*—Hon. Robert E. Lewis, Judge.

### On Rehearing.

Mr. J. C. Helm, and Messers. Stuart & Murray, for plaintiffs in error.

Mr. T. J. O'Donnell, Mr. L. F. Twitchell, Mr. L. M. Goddard and Mr. Thos. Ward, Jr., for defendant in error.

Mr. Justice Scott delivered the opinion of the court:

Catherine W. Skelton was indebted to the Denver Savings Bank. This indebtedness was secured by a trust deed on the premises involved in this action. The sum of money so secured was past due and foreclosure proceedings had been either instituted or threatened. Under the law as then existing, there was no period of redemption from sale under a trust deed. It was at this period that Joseph W. Bowles consented to, and did sign a note in the sum of $20,400.00 with the said Catherine W.

Skelton and her son Boyington Skelton, as principals, for the purpose of paying the debt to the Denver Savings Bank.

To secure Bowles as against loss in this transaction, Catherine W. Skelton, the owner of the premises, executed conveyances in the form of warranty deeds to Bowles, in which conveyances she was joined by her son Boyington Skelton. These deeds were deposited in escrow with the condition that in case of failure from any cause on the part of the Skeltons to pay the note so executed, and upon which Bowles was surety, they should be delivered to Bowles. The Skeltons did not pay the note, nor the interest thereon, when the same became due, and Bowles was compelled to and did pay it. Thereafter, and in accordance with the escrow agreement, and in the month of December, 1897, the deeds were delivered to Bowles, who caused them to be placed of record. Afterward and upon agreement between the Skeltons and Bowles, the latter made a written proposition to the county of Arapahoe to sell the lands to the county for the sum of $35,000.00. This proposition was investigated by the county attorney, and a favorable recommendation made by him. At a meeting of the Board of County Commissioners held on the 15th day of February, 1898, and while this proposition was being considered, and after a resolution was introduced by one of the members of the board favoring the purchase of the lands at the price proposed, and over the objection of the Skeltons, Bowles withdrew the offer, and for such reason alone, it appears the sale was not made.

The Skeltons then conveyed their interest in the premises to H. A. W. Tabor, as trustee, who as such, instituted this action. Pending these proceedings Tabor died, and Bradford H. Dubois was substituted as trustee. The trial court, pending proceedings, also appointed a receiver for the premises.

From a judgment rendered by the district court, an appeal was taken to this court, reported in 30th Colo. 44. By that decision this court affirmed certain items of account between the parties as found by the lower court, and these were thereafter eliminated from future consideration, and will be more specifically referred to in this opinion.

The action of the court in appointing a receiver was set aside, the judgment reversed, and the cause remanded with instructions as follows:

"Items of account between the parties determined by the court below, not specifically mentioned, will, therefore, stand. The judgment of the court, in appointing a receiver, and relating to these matters held error, is set aside, and the cause remanded for a new trial, upon the issue of the amount which plaintiffs shall be allowed for the withdrawal of the offer to sell to the county; the damages they are entitled to on account of the nursery; and to ascertain the amount and interest to which the defendant is entitled on account of the payment of the note he signed as surety, in harmony with the views expressed on these subjects. The court will also take an account between the parties and ascertain the amount which the defendant, Joseph W. Bowles, shall be charged in the way of rents from the date the account on this subject was brought down, in the judgment rendered, and the items he shall be credited with from that date, for ditch assessments, taxes and insurance. These several matters, when ascertained, in connection with the items of account allowed the respective parties, and not disturbed, will exhibit between them, and on such account, let the proper decree be rendered."

Aftrward the court below permitted the defendant to file an amended answer. To this the plaintiff objected, and instituted a proceeding in this court in the nature of an action in mandamus to compel the trial court to try

the issues upon the original pleadings. This was denied, 32 Colo. 166, and in the opinion it was said: "The question of whether or not the pleadings could be amended on the issues remanded for trial was not before us. Nothing was said on that subject. Whether or not such an amendment is permissible, is an open question, so far as any mandate of this court is concerned, within the jurisdiction of the trial court to determine it."

The order granting this amendment is one of the errors assigned.

Then, if this court has declared this question of amendment was an open one, free from mandate of this court and within the jurisdiction of the trial court, it was as if the amendment had been allowed in the proceedings before the case reached us for consideration at all, and must be considered accordingly. For in the absence of specific direction from the appellate court, this power is to be exercised in the same way and under the same rules as at any other time.—*Ellis v. Witmer,* 148 Cal. 528, 83 Pac. 800.

The power to grant leave to file amendments to pleadings is within the discretion of the trial court and unless there is plain abuse of discretion in this respect, such action will not ordinarily be disturbed.—*Jordan v. Greig,* 33 Colo. 360, 80 Pac. 1045; *Cartwright v. Ruffin,* 43 Colo. 377, 96 Pac. 261; *Smith v. Schlink,* 44 Colo. 200, 99 Pac. 566.

The chief feature of change in the amended answer from that of the original, was a withdrawal of the denial in the original answer, of the allegation in the complaint that the land was of the actual value of $35,000.00. While this may have, and seemingly did change the theory upon which the case was afterward tried, from that upon which it was originally presented and considered in this court, yet both parties acquiesced and together proceeded, without controversy in that regard, upon the different

theory, and must therefore be bound by their conduct in this particular. It seems to have been the particular effort of both parties to prove upon this trial, that the premises were of the actual value of at least $35,000.00. Upon trial counsel for plaintiffs stated to the court:

"I propose to prove that there was no market value at that time; that owners asked prices for their lands which they couldn't obtain; that the market was depressed; and we propose to prove the facts stated in our complaint."

The complaint alleged the value of the premises to be more than $35,000.00 and it is difficult to see how a withdrawal of a denial of this allegation can injuriously affect the plaintiff.

Appellants contend that this court upon the former hearing, definitely fixed the damage of the plaintiff at $15,000.00, and for such reason the amendment was not permissible. Plainly, we did nothing of the kind, for it was there said, with reference to this particular matter, "And the cause remanded for a new trial, upon the issue of the amount which plaintiff shall be allowed for the withdrawal of the offer to sell to the county." Hence, such alleged act of withdrawal upon the part of Bowles was an issue then and is an issue now, for it is upon account of the refusal of the trial court to consider the whole question of such alleged withdrawal of the offer to sell to the county, that appellants make their serious contention. Holding then that it was within the discretion of the court to allow the amendment to the answer, and finding no abuse of discretion in this respect, the allowance of such amendment was not error.

The court found, as it could not otherwise have well found, that the premises at the time of the withdrawal of the offer to sell to the county, had no market value, but was then and ever since has been of the actual value of more than $35,000.00. Based upon such finding of

fact, and for such reason, the court held that the question of the offer to sell became immaterial, in that such finding eliminated the question of damage as it was presented to the court upon the former hearing. For this reason apparently, the court refused to consider for any purpose, testimony relating to the offer to sell.

In so holding, the court overlooked the pleadings as amended, and the existing and continuing contention of the plaintiff, that such withdrawal of the offer, was in equity equivalent to a refusal upon the part of Bowles to accept payment of the sum of money due him on that date. While such finding of fact did eliminate the question of damage said to have occurred by reason of the withdrawal upon the theory of the former consideration, yet there still remained the question of equitable tender, if there was found to be such, and the testimony should have been considered for that purpose. It will be observed that this court did not limit its order of remand to a consideration of this matter upon the then theory of damage alone, but in a broader sense, to "the amount which plaintiff's shall be allowed for withdrawal of the offer to sell to the county," so that a consideration and determination of the plaintiff's contention as to equitable tender was not by such order precluded while the amended pleading would seem to make such consideration and determination both proper and necessary.

The issues as now joined in this case do not make a finding of damage in the manner suggested by the former opinion necessary to a determination of the cause. Indeed, nowhere in the prayer of the complaint is the question of damage suggested, except as it may be said to be included within the prayer for "such other, further and different relief as it shall appear upon the trial of this case, that the complainant herein may be entitled to, and as shall fully protect his rights and equities herein as trustee, and the rights and equities of the parties collect-

ively and individually whom he represents as such trustee.'' But on the contrary the specific prayer of the complaint as it relates to the withdrawal of the offer of sale was:

"Fourth. That if it should appear upon final hearing that any sum remains due to the said Joseph W. Bowles and Charles Bowles, and that they shall have any right of lien upon any of the real property herein with power to sell the same to satisfy such claim, then in such case that the equities of said grantors and this plaintiff be fully protected to the plaintiff by the decree of this Honorable Court to the intent and effect that the said real property shall at no time be sold by the said defendants, or either of them, for a sum less than $35,000.00 in cash, and that in the meantime, and from the said 15th day of February, A. D. 1898, *any sum that may be found to be due them on such date, shall not draw interest.*"

Then the question of the allowance of interest upon whatever amount found to be due Bowles on the 15th day of February, 1898, the date of the withdrawal of the offer of sale, was still clearly before the court for its consideration, and should have been determined, as prayed for in the complaint.

The testimony concerning this offer to sell, its consideration by the board of county commissioners of Arapahoe county, the conclusion reached by the several members of the board, and by the board as a whole, and the withdrawal by Bowles of the offer, was fully admitted by the court on the first trial, but after consideration it was ordered to be stricken, which order to strike was held to be error by this court upon the former review.

There has been serious question upon the part of the court, as to whether or not this testimony as now before us should be considered in the present determination of the case, or the case again be remanded for re-considera-

tion of the testimony and a consideration first had by the trial court.

But the circumstances of this case are such as to call for the exercise of the broadest equity powers of the court consistent with reason and justice. The issue has been pending for about fifteen years. The case has been before this court now for the third time, twice in all its complex phases, and once upon the issue of the pleadings alone. Nearly eight years have passed since the last trial. The original principals have both passed to the undiscovered country, leaving their descendants still struggling with their contentions, with fair possibility upon their part, if the cause be not now summarily determined, of joining their ancestors in the great beyond, before a final determination. Numerous briefs have been filed by counsel on both sides, with a shifting of position upon the part of each, seemingly whenever the status of the case, or the interest of either suggested it, leaving the case in hopeful prospect of becoming a creditable rival, in unrighteous length of time in litigation, of the celebrated *Jarndice v. Jarndice.*

The testimony upon the point of the proposed sale, is chiefly record testimony; the record of the board of county commissioners. No objection has ever been presented as to the correctness of this record. It is therefore assumed, that a reintroduction of this record testimony would result in no material change, as to that feature of the case. This record in substance discloses that Bowles made the proposition in writing as follows:

"P. O. Littleton, Colo., Jan. 19th, 1898
To the Hon. Board of Co. Com. of Arapahoe Co.,
        Denver, Colo.

I offer you what is known as the 'Skelton ranch' for sale. The said ranch being so well known to you that a description is unnecessary.

It consists of 320 acres, as shown by the accompanying map, with forty shares of stock in 'The Nevada Canal Co.' which is one of the oldest ditches on the upper Platte river. For the sum of thirty-five thousand ($35,000.00) dollars. This offer is good for ten days.

Respectfully submitted,

Jos. W. Bowles."

Afterward, and on the 2d day of February, 1898, Bowles made the additional offer in writing as follows:

"Residence P. O. Littleton, Colo., Feb. 2, 1898.
To the Hon. Board of Co. Com. of Arapahoe Co.,

Denver, Colo.

Gents:

When I offered you the 'Skelton farm' of 320 acres for $35,000.00 I was informed that you did not want the S. W. ¼ of Sec. 8, or the upland lying west. Since that time information has come to me that you could use it to advantage. Therefore I will add the S. W. ¼ Sec. 7, Twp. 5, R. 68, to my original offer, and the two pieces of land in question is now offered to you for $35,000.00

Very respectfully yours,

Jos. W. Bowles."

The record then sets out the complete report of two members of the board acting as a committee, who made examination of the premises, and in which report the following recommendation is made:

"After considering all of the foregoing facts in comparison with all other propositions made to this board, your committee respectfully recommend the purchasing of this place for the county farm, and that it be at once secured, thereby giving the county possession of the same not later than March 1st, to the end that the same be placed under proper cultivation and such arrangement made for buildings as will be necessary for the use of the county, so as to occupy the same as soon as possible. All of which is respectfully submitted. (signed) L. W. Wells,

J. C. Twombly, majority of committee on Hospital and Farm.''

This report is supported by the favorable report of the county attorney as to the legal authority to make the purchase. These reports were filed and were being considered at a meeting of the board held on the 15th day of February, 1898. The record for that day further recites:

"Messrs. Bert Sanford, O. B. Liddell and A. W. Rucker appeared as protesting and in behalf of protestors against the purchase of the Skelton farm. On motion, recess was ordered until two o'clock P. M.

2 P. M. The Board met, pursuant to the order for recess. Messrs. Jas. M. Brown, John Lilly, John Meyers, H. A. W. Tabor, James Patrick and Boyd Skelton appeared as and in behalf of the petitioners and urged the purchase of the 'Skelton Farm.'

The hearing of those in favor of and opposed to the purchase of the property in question being at an end, Mr. Charles Bowles presented to the board the following withdrawal of the offer of Joseph W. Bowles to sell the Skelton farm, which upon being read, was ordered filed, viz:

"To the Honorable Board of County Commissioners of Arapahoe County.

Gentlemen:

On account of the many and strong protests entered by the residents of that community in which the 'Skelton Ranch' is located, against your honorable board purchasing the said ranch as a poor farm, I wish to withdraw the proposition made to you wherein said ranch, consisting of 480 acres, was offered to you for $35,000.00.

Very respectfully yours,

(signed) Jos. W. Bowles, C.''

The resolution last referred to, closes with the following:

"*Therefore,* be it resolved that the report of said committee be and the same is hereby adopted and the proposition made by Mr. J. W. Bowles for the sale of said place to the county be and the same is hereby accepted upon approval by this board of the title to said place.

(signed) J. C. Twombly."

The record then recites:

"Chairman Fleming and Commissioner Wells announced that they had intended to give their support to the above resolution, and had the offer of Mr. Bowles not been withdrawn, they would now support its acceptance and the adoption of the resolution as it appears above. On motion the board adjourned to meet Wednesday, Feb. 16, at 10 A. M."

This record is fully corroborated as to the acts and intentions of the commissioners at the time, by the sworn testimony of each of the three members of the board then acting, and who say that they would have so voted but for the withdrawal. So that it is not possible to conceive the slightest change in this testimony, if the case should be remanded for a further hearing upon that point.

There is no suggestion in the briefs of counsel upon either side, that this record does not speak the truth, and all their arguments are based upon the assumption that it does.

Counsel for plaintiff in error say in their brief:

"Our position has always been that the evidence taken before Judge Palmer was in the record to stay there until the case is finally disposed of. The case was only partially disposed of on the first appeal, and was remanded with directions to the court below. This remand did not take any evidence out of the case. On the contrary, it corrected the acts of Judge Palmer in attempting to throw some of the evidence out."

Counsel for defendant in error, likewise agree in the following statement in their brief;

"Plaintiff's in error themselves take the position that said records were admitted in evidence and are in this case for the consideration of the court. We are willing to adopt that position, and that position being established, the evidence being in the record for the consideration of this court, it was in the record for the consideration of the court below   *   *   *   We will simply treat the evidence as being in the case, but as having been disregarded by the court below under and upon this legal theory, and so we are perfectly willing to say with the plaintiff's in error, that if this court finds that it is and was material, it should consider the evidence accordingly."

Beside this the supreme court in 30th Colo. has treated this testimony, as if in the record and made findings therefrom, from which we cannot escape, and to which reference will hereafter be made in this opinion.

In addition to all this, counsel for both parties ask for a final determination at this time. Counsel for appellee in reply to suggestion of counsel for appellant to this effect, ask this in the following language:

"Counsel have not been authorized to speak for us or our client, but we do ask this court to forever end this controversy by either affirming the judgment *in toto,* or so restating the account as that it shall come nearer doing justice to the defendant in error."

For these reasons, and for the reason that to remand the case upon this the only point now necessary to be considered, can have no other apparent result than to prolong the litigation, with all the attendant expense and annoyance and without other or different conclusion than we have now reached, we have concluded to determine the case now and render a final judgment herein.

It has been agreed by the parties and finally determined by this court, that the conveyances to Bowles by the Skeltons, while in the form of deeds, were in law and

in effect a mortgage, and it will therefore be so treated and the rights of the parties determined accordingly. This mortgage was then to idemnify Bowles against loss which he might sustain in the event of his having to pay the note which he signed as security, and which he did pay. So that the amount thereby secured, became fixed and definite as a sum due from the Skeltons to Bowles. It follows then that the latter had no right to assume possession of the premises and to commit the wrongs he did in consequence thereof.

What then is to be considered as the effect of Bowles refusal to permit the sale to the county? It is argued that Catherine Skelton being the real owner of the premises could have made the sale despite Bowles. This is not tenable. Bowles had recorded deeds which on their face were absolute conveyances. In his proposition to sell to the county he represents himself as the owner. It is absurd to assume that under these circumstances the county would have accepted a deed from Mrs. Skelton in which Bowles did not join, even though the former had made representations as to the real status of the property as subsequently and uniformly found by the courts, and had also said that out of the sum to be so received, she had agreed that Bowles should be paid the amount that was then due him.

It is clear that Bowles' own act and that alone prevented the sale and the consequent payment at that time of all sums due him. In 30th Colo. the court said:

"He went into the possession of the property claiming it as his own; did not recognize that he was merely a mortgagee; had instructed his son to withdraw the offer without in any manner consulting the Skeltons; in short, in this respect, acted, as he subsequently claimed, as though he was the absolute owner of the property, and that the Skeltons had no interest to protect. On the day of the final action before the board, his son Charles, who

must then have known the wishes of his father with respect to the matter, allowed Mrs. Skelton to believe the sale would probably be made, and yet, in the face of this statement, according to the testimony offered and refused, appeared before the board and used his influence to prevent an acceptance of the offer made. In the light of this conduct and action, the conclusion is irresistible that Bowles had made up his mind to prevent a sale to the county, and had the Skeltons made any arrangement towards effecting a sale, he would have prevented it by refusing to convey. Whatever his motive may have been for withdrawing the offer, but conceding that its sole purpose was, as stated in the withdrawal, to prevent the location of a poor farm upon these lands because of the objections of his neighbors, then, in order to effect this end, or at least prevent the possibility of the purchase for the purpose intended by the county, it was necessary for him to take the course he did, and he would not have receded from his position, no matter what course the Skeltons might have pursued.''

And again:

''He should have allowed his offer to stand, and if the county had refused to accept his proposition without any action upon his part, he would have been relieved from responsibility on this account. It is true the offer was never accepted by the county. If this were an action between the county and the defendant Bowles, for a specific performance of his offer, this would be material, but as between himself and the Skeltons it is not. The county was given no opportunity to accept in a manner which might have been binding upon itself, as well as the defendant. He took the step to prevent this result by withdrawing his offer before the commissioners could act, at the close of the hearing before the board, had for the purpose of listening to those urging and objecting to the proposed purchase.''

It is clear then, that in agreement with the Skeltons, Bowles made to the county a written proposition to sell the premises for the specified sum of $35,000.00. That this sum was largely in excess of the debt due him at that time; that the officials authorized to act, and after due investigation and deliberation, and at a meeting for that purpose, stood ready and willing to make the purchase, and were in the act of taking such official action when prevented by Bowles' withdrawal. That the sale was prevented only by the willful act of Bowles in withdrawing the offer of sale, over which he then had sole control. That this was done over the protest of Boyington Skelton, and of the representatives of Mrs. Skelton, then present. And that but for this act the sale would have been made and Bowles would have received all that was due him, and which was secured by the premises involved. No other reasonable deduction can be made from the pleadings and evidence.

He had thus agreed that he should be paid in this manner. He violated the agreement and refused to thus accept payment. He was not paid solely because of his own act. In all equity he should be held to have refused a tender of payment of the sum of money due him on that day, and we so hold in this case. It follows as the result of such tender, that he was entitled to judgment in the court below for the money due him on the said 15th day of February, 1898, but without interest from that day to the time of such adjudication. While the amount found to be due by such adjudication was in excess of what we now find it should have been, yet the excess was occasioned solely by the erroneous allowance and computation of interest upon the exact principal sums as found by the lower court, and therefore the deduction which we now make is easily calculable. The sum we now determine was under such adjudication due at that time, and was included within the larger sum so erroneously al-

lowed by the trial court. It should therefore bear interest as of the date so adjudicated.

This with the inclusion of other matters of debit and credit determined, and authorized to be determined upon the former review, and under the mandate of the court at that time, should have constituted the amount of the final judgment in this case, in the absence of error otherwise occurring.

In all remaining matters of account required by the order of this court, the trial court made specific findings, and upon careful consideration we see no reason to disturb any of these. The only one of these seriously questioned, relates to the allegation of damage to the nursery, upon the part of Bowles, while in possession. This the court finds to be in the total sum of $310.00. The testimony in this regard is so conflicting that almost any sort of a conclusion could have been reached, but in as much as the court had the witnesses before him and was therefore, in a better position to determine the weight of the evidence, we approve the finding with all others in relation to all such matters of accounting, aside from the principal debt and the interest thereon.

As it relates to the note paid by Bowles, the court found that the fact of the note was $20,400.00, but that Bowles received at the time of the transaction from the brokers, the sum of $650.00 which should be deducted from the face of the note, leaving the principal sum due Bowles from the Skeltons to be $19,750.00; that Bowles paid interest on the note on July 28th, 1896, in the sum of $691.25, the interest on which sum so paid to February 15th, 1898, applying the rule we have adopted, amounts to $85.56, making a total due on this item on February 15th, 1898, of $776.81. Further, that on April 28th, 1897, Bowles paid the principal of the note in the amount of which the Skeltons should be charged at that time, as in the sum of $19,750.00, and at the same time paid interest

on the note in the further sum of $1,052.23, or a total on that day of $20,802.23. Interest on this sum from the day such payment was made, to February 15th, 1898, amounts to $1,326.71, making a total from this item of $22,128.94.

The amount due Bowles therefore, on February 15th, 1898, stands as follows:

On account interest paid July 28, 1896....$   776.81
On account principal and interest paid
    April 28, 1897.........................22,128.94

Total .............................$22,905.75

The court further found as a total of the sums due the Skeltons including rental value of the lands while Bowles was so wrongfully in possession, and for the years 1900 and 1901, the amount he received from the Denver Union Water Company from condemnation proceedings, and as damage to the nursery and other items, to be $3,312.48. In addition to this the court found Bowles indebted to the Skeltons in a sum adjudged under the former decree of this court, and not included in his findings on subsequent account, the further sum of $2,674.08; so that the total debits upon the part of Bowles in this accounting as found by the court stands as follows:

Adjudged by supreme court decree.......$2,674.08
The district court finding on subsequent acc..3,312.48

Total to be credited to Skeltons.......$5,986.56

The court also found the Skeltons to be indebted to Bowles upon items of account including insurance, taxes and other items properly allowed and paid by Bowles, in the total sum of $2,539.34, so that this accounting stands as follows:

Due from Bowles to Skeltons.............$5,986.56
Due from Skeltons to Bowles.............$2,539.34

Balance in favor of Skeltons.,..........$3,447.22

Then the judgment which should have been rendered by the trial court under this accounting and under the rule here stated, as to interest, should have been $22,905.75, less the above credit. of $3,447.22, or in the total sum of $19,458.53.

It will be observed from this review that we find no such substantial error occurring upon the trial below, as will justify a reversal of the judgment and a remand for a new trial.

In fact it only necessitates, and we seem to be justified in making only a restatement of the account in accord with the rule stated, and with the account so restated, affirming the judgment rendered and as of that date.

The only error upon the part of the trial court was in its refusal to consider the testimony as it relates to the offer to sell, the resultant effect of which was to add to the finding of the sums due Bowles, interest thereon from February 15th, 1898, to the date of the judgment rendered, which we find to be erroneous. The findings as to specific amounts upon which this interest was calculated are clearly supported by the testimony and cannot be disturbed. It would seem then that it is our duty only to restate the account and so modify the judgment rendered on the 14th day of November, 1905, by substituting the sum of $19,458.53 as the rightful sum due, and as of that date. The lawful interest on such judgment from that date to this time amounts to $11,355.21, which with the principal sum we so find to be due November 14th, 1905, amounts to a total of $30,813.74. The case is remanded to the district court with instructions to enter judgment in this amount and as of this date.

In all other respects the judgment and findings of the district court are affirmed, with the further modification that this judgment so entered, be. decreed a lien upon the property and premises involved and as fully set out and

described in the judgment of the court below; but that if the amount of the judgment which we so find, with interest from this date, be deposited in the registry of the district court, by the party or parties against whom it is rendered, within four months from the date thereof, then the judgment shall be fully satisfied; that on failure to do so, a special execution issue from the district court for the sale of the property upon which the judgment is decreed a lien; and that upon deposit of the amount indicated, or on redemption of a sale of the property under special execution, that the deeds from the Skeltons to Joseph W. Bowles, as well as the deeds of trust to The Denver Savings Bank to which reference has been made, in the opinion, as well as the note or notes secured thereby, and the note executed by the Skeltons, with Bowles as security, be cancelled, annulled, set aside, and of no other force or effect. The cost in this proceeding, as well as the costs of both trials will be taxed to the defendants.

Except as herein modified, and with such modification the judgment of the district court is affirmed. This case is now pending on a motion for rehearing, the former opinion is withdrawn, this opinion filed in lieu thereof and the motion for rehearing is denied.

Decision *en banc.*

Mr. JUSTICE HILL, Mr. JUSTICE WHITE and Mr. JUSTICE GABBERT dissent.

Mr. JUSTICE GABBERT, dissenting:

I, also, dissent from the majority opinion. I fully agree with what is said, to the effect that the withdrawal of the offer by Bowles to sell to the county was wrongful. That act is what caused the litigation. By Bowles, after the offer was withdrawn, taking possession of the property and claiming it as his, the Skeltons were placed in the position where they were compelled to take steps to protect their rights. The fact that had Bowles not with-

drawn his offer, the property would have been sold to the county, and he would thus have received his money, and the Skeltons the difference between what they were owing him and the sum which the county would have paid, is made the basis of the theory upon which the majority opinion proceeds, namely, that thereby he refused a tender of the amount due him the day the offer was withdrawn. If this is correct, then interest ceased down to the date the judgment now directed is entered, which would eliminate the interest on the judgment this court now holds should have been entered by Judge Lewis. Mr. Justice Hill discusses this question fully in his opinion, and nothing can be added here which would demonstrate any more clearly than what he has said, that accepting the theory of a tender, it is illogical to add interest in the sum of more than eleven thousand dollars; but I do not agree that the case should be determined upon the theory of a tender.

When the case was first brought to this court, it was considered, among other purposes, as one for damages; that is, the Skeltons, according to their pleadings, and any uncertainties and ambiguities therein which were cleared by the answer of Bowles, sought to recover damages they had sustained by Bowles withdrawing the offer to sell to the county, and other damages growing out of the wrongful act of Bowles in taking possession of the property. When the case thereafter reached the trial court, the defendants were permitted to amend their answer, the purpose of which was to eliminate the question of damages as the result of Bowles withdrawing the offer. This amendment changed the issue on the question of the value of the property.

We said, in 32 Colo., that whether or not the answer could be amended was a matter for the trial court to consider and determine; but this did not empower the trial court to permit an answer which was wholly unauthor-

ized. In the original answer it was unequivocally stated
that the value of the property did not exceed the sum of
$20,000. By the amended answer it was alleged that its
market value at the time the offer was withdrawn was
equal to the sum of $35,000, and that since that time it has
increased to the sum of $50,000. To support the applica-
tion for leave to file this answer, an affidavit of Mr.
Bowles was filed, which stated, in substance, that at the
time of verifying the original answer, his attention was
not called to the market value of the property, including
the water rights appurtenant thereto, and that his state-
ment as to the value in his original answer related only
to its actual value. By this affidavit it was sought to
show that defendant did not originally intend to state the
market value of the premises. The defendant was a
farmer; had resided in the vicinity of the premises about
thirty years, and presumably was familiar with their
then value, when his original answer was filed, which,
when called in question, could only be determined by their
market value. This was the value which the defendant
intended to, and did, state in his original answer, al-
though the precise expression, "market value," was not
employed.

A motion to amend an answer based solely upon the
ground that the defendant did not mean to be understood
to state what he stated in his original answer, which, from
the latter pleading, it is clear is not the case, should be
denied. In mere matters of form or mistakes of dates,
or verbal inaccuracies, courts should be indulgent in per-
mitting amendments; but when application is made to
amend an answer with respect to a material fact, or to
essentially change the grounds taken in the original an-
swer, they require very cogent circumstances of a nature
to repel the notion of any attempt to evade the justice of
the case, or to set up new defenses to support the ap-
plication to amend; otherwise, it will be denied. This

rule is particularly applicable when a defendant, by his answer under oath, makes a material allegation on an issue between the parties upon which the case was originally tried, which he seeks to change after a new trial is granted by the supreme court, and the cause remanded for re-trial upon that issue.

It was, also, error to permit an amended answer to be filed, alleging that at the time it was filed the property involved was worth the sum of $50,000. The rights of the parties on the question of damages for the withdrawal of the offer to sell to the county were fixed by its value at the time the offer was withdrawn, and could not be changed by subsequent increase or decrease of such value.

The case was tried upon the amended answer, which should not have been allowed, and for this reason, as appears from the remarks of the trial judge, the question of damages in the particular under consideration, was eliminated, when it should have been re-tried on the issue on this subject, as made by the pleadings originally filed. From these pleadings the testimony which counsel for defendant have treated as being here for consideration, and from the admissions they have made in their briefs, it is clear the Skeltons were damaged in the sum of $15,000 by the withdrawal of the offer to sell to the county, that being the difference between the market value the day that offer was withdrawn, and the price the county would have paid had Mr. Bowles permitted his offer to stand. Had the case been tried upon this theory, as it should have been, it is manifest the judgment would have been much more favorable to the Skeltons.

Other items of damages were, also, involved, which were not correctly determined by the trial court. To enter into a consideration of these items in detail can serve no useful purpose. From the testimony, in my judgment, had the Skeltons been allowed the damages for the withdrawal of the offer to the county, and to which they were

clearly entitled, and other items in their favor which the testimony establishes, after charging them with the amount of their indebtedness to Bowles, and items to which he and his successors are entitled, the judgment against the Skeltons at this time should only be in the sum of $5,771.40.

Mr. JUSTICE WHITE dissenting:

I think the pleadings in this case, filed in the district court, and upon which the first trial was had, would warrant the case being disposed of upon the theory that the transaction as to the sale of the land to the board of county commissioners, constituted an equitable tender of the payment of the Skelton indebtedness to Bowles. And, if it were not for the decision of this case in *Du Bois v. Bowles et al.,* 30 Colo. 44, 69 Pac. 1067, I should hold such to be the proper theory to apply, if the facts were established by sufficient evidence, but I could not agree to the revival of interest as of the entry of the decree now before us in the district court. I think, however, that the decision in the 30th Colorado, *supra,* is the law of this case, and renders it impossible to dispose of the matter upon the theory of an equitable tender without doing violence to judicial procedure and precedent.

But were we at liberty to apply the rule of equitable tender, I think there is no proof or admission that the county would have purchased the land if Bowles had not withdrawn the offer to sell. As to the transaction before the board of county commissioners, and as to what there took place, the record is silent. The evidence thereof was offered, received and subsequently stricken from the record in the first trial of the case. It was offered at the second, but refused by the trial court upon its own motion. It is not in the record now and never has been in any record before this court. The language of counsel for defendent in error, quoted in the opinion, that such evidence be considered in the record does not, in my judg-

ment, foreclose the question as to whether the county would or would not have purchased the land if the offer to sell had not been withdrawn. That language is contained in the brief presented to this court upon the first review of the case, and was upon the theory, that irrespective of that question, under the decision of the trial court, the rights of plaintiff in error were not injuriously affected. Moreover, the suggestion that such evidence be considered in the record was not accepted by this court at that time, and the matter was left open for further inquiry and future determination. Under the law of the case as established by *Du Bois v. Bowles et al., supra,* I think the amendment to the answer permitted by the trial court after such reversal, was proper and properly presented the issues as outlined by that decision, and the judgment of the trial court was right, except as to some minor matters relative to damages to the nursery.

Mr. Justice Hill dissenting:

I cannot concur in certain portions of the conclusions reached by the majority. In my opinion some of them are inconsistent. In this respect I refer to the $11,355.21 item of interest which is allowed Mr. Bowles upon his $19,458.33 from February 14th, 1905, the date of the entry of judgment at the last trial, up to the present time. As I understand the opinion it is that the sum of $19,458.53 was due him upon February 14th, 1905, for which reason the conclusion is that he is entitled to interest thereon at eight per cent. per annum from that date to the present time, which would amount to $11,355.21, the item above referred to. It will be observed that this suit was instituted May 31st, 1898, at which time the Skeltons were owing Mr. Bowles this same $19,458.53 and more, which the court says was due him upon February 14th, 1905. The original pleadings presented the question of an equitable tender to Mr. Bowles of all moneys due him secured by the deeds held

by him as mortgages on or about February, 1898. The opinion, as I understand it, sustains this plea and the case is disposed of accordingly, and upon account of his actions Mr. Bowles is not allowed interest upon his original debt from the date of this tender in February, 1898, until February 14th, 1905, the date of the entry of the second judgment.

I concur in the conclusion pertaining to the equitable tender, so far as its effect is enforced, but I am unable to comprehend under what line of reasoning, when for this reason he is prohibited from having interest from the date of the tender down to the date of the second judgment, that he should thereafter have interest from that date up to the present time. In other words, as I view it, if the plea and proof of the equitable tender are to be sustained and for this reason interest ceased from the date this tender was made, it should thus continue until Mr. Bowles was willing to accept and thereby gave the Skeltons an opporunity to pay him the actual amount which was his due; such time has never yet been reached. The first decree in his favor was reversed by this court as clearly erroneous in nearly every respect.—*Dubois v. Bowles,* 30 Colo. 44, 69 Pac. 1067. The second (entered November 14th, 1905) after including a final accounting, gave to Mr. Bowles a judgment for $32,779.69, declared it a lien upon the lands in question and ordered foreclosure accordingly. The majority opinion says that this judgment included $13,321.16 more than he was then entitled to. It is not claimed that at the time or after the rendition of this second judgment, Mr. Bowles was willing to or would accept the amount this court holds was then properly due him, but to the contrary, the record discloses that every inch of the ground is contested and every effort possible is made to sustain the validity of this erroneous judgment.

According to the majority opinion, at the time of the

rendition of this second judgment, the only alternative left the Skeltons in order to have prevented interest from again starting upon the amount that was then actually owing Mr. Bowles, was to have paid to him an additional $13,321.16 more than this court says was then lawfully due him: As I view it, this conclusion cannot be harmonized and cannot be supported by reason or authority. If Mr. Bowles was in the wrong when this suit was instituted (and I think he was) and for that reason was not entitled to have interest on his loan after the equitable tender, he was not thereafter entitled to interest upon it at any time until he was willing to accept the amount due him at the time the tender was made. If we are to now say that he is entitled to interest from February 14th, 1905, because a certain amount was then owing him, following the same reason, why should we not say that he was entitled to interest upon this same amount from the date the first judgment was entered or from the date of the commencement of the action, as practically this same amount was due him at each of these dates? It appears to be that the allowance of this interest is entirely inconsistent with the theory upon which the case is disposed of.

It is true that the judgment now ordered is in some respects an affirmance of a part of the second judgment. It might properly be termed a modification of that judgment; but one of the contentions of the plaintiffs in error, and upon which they secure its reversal, is entirely in conflict with the theory upon which the trial court acted. The record discloses that he was requested to sustain this plea of an equitable tender but declined to do so. Under such circumstances, I cannot conceive what reason there is why interest should start upon his claim until the plaintiffs, who were right in this portion of the contention, have had an opportunity to act accordingly, and until that opportunity is given them how can it be said

that the judgment now ordered is in fact a modification of the former one, especially since the trial court refused to recognize the plea which this court now says should have been sustained? But regardless of this, as I understand the rule pertaining to interest in ordinary suits, it is that a mere modification of the judgment does not suspend the running of interest pending the appeal, *if such judgment be substantially affirmed.*—Vol. 22 Cyc. 1561; 128 Cal. 572; *Barnhart v. Edwards,* 57 Pac. 1004; *Beckman v. Skaggs,* 61 Calif. 362; *Clark v. Dunnam,* 46 Calif. 204; *Dougherty v. Miller,* 38 Calif. 548; *Black v. Carrollton R. Co.,* 10 La. Ann. 33, 63 Am. Dec. 586; *Wilson's Appeal,* 8 Pa. Cas. 579, 11 Atl. 670; *Kneeland v. American L. & T. Co.,* 138 U. S. 509, 11 S. Ct. 426, 34 L. Ed. 1052.

If the rule above stated is correct, I cannot conceive how anyone can contend that the judgment of the trial court in this case is substantially affirmed when it includes $13,321.16 more than Mr. Bowles was entitled to, and is for nearly twice the amount that it should have been, and also when the reversal or modification according to the opinion is based upon the principal point contended for by the plaintiffs and in which this court now says they were right.

In *Insurance Co. of North America v. Forcheimer & Co.,* 86 Ala. 541, 5 So. 870, it was held that where a new judgment is entered by the supreme court interest cannot be added as of the date of the former judgment.

I am also unable to agree with the majority pertaining to the damages allowed to the nursery. In my opinion the trial court misconceived the scope and effect of the evidence pertaining to this subject. I think the question of damages to the nursery should be remanded for a new trial to a jury and the amount of such damages deducted from Mr. Bowles' claim before foreclosure is ordered.

Decided March 3, A. D. 1913.    Rehearing denied June 2, A. D. 1913.